Filed 7/28/23  In re E.D. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.D., a Person Coming Under the Juvenile Court Law. | B323153<br><br>(Los Angeles County Super. Ct. No. PJ54050) |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>E.D.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Susan Ser, Judge.  Reversed in part and remanded with directions.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Seth P.

McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

E.D. appeals from the juvenile court's adjudication order sustaining two counts of a petition pursuant to Welfare and Institutions Code section 602.  The three-count petition filed against appellant, a 17-year-old minor, alleged one count of first degree residential burglary (Pen. Code,[1] § 459, count 1), and two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), counts 2 and 3).  In count 2 it was alleged that appellant threw a hammer at the victim, and count 3 was based on an alleged attempt by appellant to hit the victim's truck with his car while the victim was chasing appellant.  After a contested hearing, the trial court dismissed count 1, but sustained counts 2 and 3, and found them to be felonies.[2]  The trial court declared appellant a ward of the court and placed him home on probation.

Appellant contends the trial court's true finding on count 3 for aggravated assault was not supported by substantial evidence and must be reversed.  We agree.  We therefore reverse the adjudication order as to count 3, and remand for a new adjudication and disposition order sustaining the petition only as to count 2.  Because we have concluded that substantial evidence does not support the juvenile court's true finding that appellant committed the aggravated assault alleged in count 3, our

_____

[1] Undesignated statutory references are to the Penal Code.

[2] The court denied a defense motion to reduce counts 2 and 3 to misdemeanors.

conclusion is the equivalent of an acquittal. Appellant may not be retried on the allegation. (*People v. Eroshevich* (2014) 60 Cal.4th 583, 591.)

## FACTUAL BACKGROUND

*Prosecution Case*

On June 15, 2022, around 8:40 a.m., Juan Velasquez was in his backyard when he saw appellant at the front door of Velasquez's house. Appellant appeared to be leaving the house with some of Velasquez's son's clothing in his hands. Velasquez recognized appellant as one of his son's friends. As he was leaving, appellant said to Velasquez, " '[I]f you guys follow me, all of you are going to die.' " Appellant then left in a black Camry, which had been running and parked in the driveway.

Velasquez got into his truck and began driving around the neighborhood looking for appellant. After a few minutes, Velasquez spotted appellant's car and began following him. Appellant stopped near a Vons supermarket and picked up a female passenger. Velasquez continued to chase appellant's car and eventually got close enough to take a photograph of the license plate. Velasquez called 911 and stayed on the line while maintaining his pursuit.

As Velasquez was chasing appellant on San Fernando Mission Boulevard, appellant tried to drive his car into Velasquez's truck while Velasquez was driving behind him. Appellant's car came within a foot of Velasquez's truck, and Velasquez swerved to avoid being hit. At another point during the chase,[3] appellant stopped and threw a hammer at Velasquez. The hammer landed in the bed of Velasquez's truck, about three

---

[3] The record is not clear as to the order of these two events.

3

feet behind the driver's seat.  Velasquez believed that appellant was attempting to make him stop the chase with these maneuvers, but Velasquez did not want to break off until the police arrived.

Velasquez followed appellant into an alley where both vehicles stopped.  Appellant got out of his car and walked toward Velasquez, carrying a toy gun that Velasquez believed was an AK-47.  Appellant pointed the gun at Velasquez from about 100 feet away, and Velasquez left the alley.  Velasquez stopped his pursuit of appellant once the police arrived.

Officer Joaquin Lopez with the Los Angeles Police Department was on patrol in the area of San Fernando Mission Boulevard and Haskell Avenue around 8:45 a.m. when he saw appellant's black Camry pull into a parking lot.  Officer Lopez and his partner began following the Camry when it exited the lot, and Officer Lopez noticed Velasquez's blue Ford truck pulled over on the side of the road.  Officer Lopez saw the driver of the Camry throw an object toward the truck.  The officers activated their lights and sirens, pursuing the Camry as it made several turns.  Eventually, the driver exited the vehicle and fled.  Following a brief search of the area, appellant was apprehended and identified as the driver of the Camry.

*Defense Case*

Appellant and his mother, Lisa H., both testified.  Appellant stated that he had known Velasquez's son Salvador for about five years—since the sixth grade, and he had been to Salvador's house "countless time[s]" "just to hang out."  Most recently, he had been there for a small gathering a week before the incident.  On that occasion, Velasquez had cooked steaks for everyone.

4

On June 15, appellant did not know that Salvador had been incarcerated three days earlier, and he could not remember why he went to Salvador's house that morning. Appellant knocked on the front door, and finding it unlocked, opened it and started to enter the house. But no sooner had he taken one step inside than the dogs started barking and appellant turned to leave. Velasquez came to the door and said, " 'Get out.' " Appellant immediately went to his car and left, with Velasquez following right behind him in his truck.

Appellant saw his mother walking from the bank and stopped to pick her up. As appellant continued driving, his mother happened to look in the rear view mirror and saw a blue truck driven by a man "looking really crazy and agitated" following them. Driving erratically behind appellant's car, Velasquez was "going back and forth in different lanes" and chasing appellant like "a crazy person." Appellant and his mother were terrified. After his mother told appellant to " 'get away from that guy. He's scary,' " appellant dropped her off a couple blocks away from her house and drove away with Velasquez still in pursuit.

Appellant was driving "all over the place," and even threw a hammer from his car window toward Velasquez in an effort to stop Velasquez from chasing him. Finally, Velasquez chased appellant into an alley, where appellant got out of the car and ran toward Velasquez. Velasquez backed his truck out of the alley. Appellant denied pointing anything at Velasquez.

Appellant explained that he fled when police began chasing him because he did not know what was happening and he feared for his life.

## DISCUSSION

### Substantial Evidence Does Not Support the Juvenile Court's Finding on Count 3 that Appellant Attempted to Hit the Victim's Truck With His Car

Appellant contends there was insufficient evidence to support the juvenile court's finding that he attempted to hit Velasquez's truck with his car. Because the evidence established that Velasquez was *behind* appellant during the entire chase and there was no evidence appellant suddenly applied his brakes to cause a collision, appellant argues that Velasquez's testimony that he tried to hit Velasquez's truck was inherently improbable and thus insufficient to support the court's finding of an aggravated assault. Appellant further asserts that in the absence of any evidence to support a finding that appellant *willfully* attempted to hit Velasquez's truck, the evidence was insufficient to sustain count 3. Appellant contends the juvenile court's finding on count 3 must therefore be reversed.

1. *Relevant Legal Principles*

When the sufficiency of the evidence to support a criminal charge in a juvenile proceeding is challenged, we apply the same standard of review as in an adult criminal trial. (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1518.) That is, we "examine ' "the entire record in the light most favorable to the judgment" ' to determine whether it discloses substantial evidence—' "evidence that is reasonable, credible, and of solid value" '—' "from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citation.] Our review ' " 'presume[s] in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence.' " ' " (*People v. Veamatahau* (2020) 9 Cal.5th 16, 35–36.)

6

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) In assessing the sufficiency of evidence based upon inference, we "may consider only those inferences that are reasonably supported by the record," and must not "venture beyond the evidence presented at trial." (*People v. Ware* (2022) 14 Cal.5th 151, 167.) A reasonable inference " 'must logically flow from other facts established in the action.' " (*Id.* at p. 168.) It " ' "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360; *People v. Sanford* (2017) 11 Cal.App.5th 84, 91–92.)

Of course, it is the exclusive province of the trier of fact to resolve conflicts and inconsistencies in the testimony, and " 'unless the testimony is physically impossible or inherently improbable, [the] testimony of a single witness is sufficient to support a conviction.' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118, quoting *People v. Young* (2005) 34 Cal.4th 1149, 1181.) Nevertheless, "[t]estimony is properly discarded on a sufficiency of evidence analysis when it is inherently improbable or improbable on its face, that is, when it seeks to show ' "that something has occurred that it does not seem possible could have occurred under the circumstances disclosed." ' " (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1151.) "The inherently improbable standard addresses the basic content of the testimony itself—i.e., could that have happened?—rather than the apparent credibility

7

of the person testifying. Hence, the requirement that the improbability must be 'inherent,' and the falsity apparent 'without resorting to inferences or deductions.' [Citation.] In other words, the challenged evidence must be improbable ' "on its face" ' [citations], and thus we do not compare it to other evidence (except, perhaps, certain universally accepted and judicially noticeable facts). The only question is: Does it seem *possible* that what the witness claimed to have happened actually happened?" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729; *People v. Mayberry* (1975) 15 Cal.3d 143, 150; *People v. Headlee* (1941) 18 Cal.2d 266, 267 ["[t]o be improbable on its face the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed"].)

Juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt of every fact necessary to constitute the crime when they are charged with violation of a criminal law. (*In re Winship* (1970) 397 U.S. 358, 368.) A juvenile court's finding in a delinquency proceeding must therefore be reversed if one of the essential elements of the offense is not supported by substantial evidence.

"An assault conviction requires proof the defendant did (1) 'an intentional act' with (2) 'actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.' " (*People v. Malik* (2017) 16 Cal.App.5th 587, 598; *People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).) An assault is aggravated when committed "by any means of force likely to produce great bodily injury." (§ 245, subd. (a)(4); *People v. Aguayo* (2022) 13 Cal.5th 974, 983.) " '[A]ll aggravated assaults are ultimately determined based on the force likely to be

applied against a person.' " (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1035.)  And while the mere possibility of serious injury is not sufficient to establish an aggravated assault, "the evidence may show that serious injury was likely, even if it did not come to pass." (*In re B.M.* (2018) 6 Cal.5th 528, 535.)

As a general intent crime, an assault does not require an intent to cause injury or a subjective awareness of the risk that a battery might occur.  (*Williams, supra,* 26 Cal.4th at p. 788; *People v. Leonard* (2014) 228 Cal.App.4th 465, 486.)  However, "a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct.  He may not be convicted based on facts he did not know but should have known." (*Williams,* at p. 788; *People v. Brugman* (2021) 62 Cal.App.5th 608, 622.)  Moreover, " 'mere recklessness or criminal negligence is still not enough' to satisfy the mental state for assault."[4]  (*Brugman*, at p. 622, quoting *Williams*, at p. 788.)

2. *The Evidence Was Insufficient to Support the Juvenile Court's Finding on Count 3 Because It Was Based on Velasquez's Inherently Improbable Testimony that Appellant Attempted to Hit Velasquez's Truck With His Car While Velasquez Was Driving Behind Appellant*

The sole evidence in support of count 3 was Velasquez's testimony that as he was driving behind appellant, he swerved to avoid being hit by appellant's car, which had come within one foot

---

[4] The Supreme Court used the term " 'recklessness' in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another." (*Williams*, *supra*, 26 Cal.4th at p. 788, fn. 4.)

of Velasquez's truck.[5]  But in order to support a reasonable inference that appellant tried to hit Velasquez's truck with his car, there had to be *some* evidence that appellant was in a position to do so.  There was none.  Although appellant testified he was driving "all over the place," there was no evidence that appellant's car and Velasquez's truck were ever side-by-side; throughout the chase, Velasquez was driving *behind* appellant.  Velasquez also did not testify that appellant tried to cause a collision with the pickup truck behind him by stopping suddenly or abruptly slowing down.  And Velasquez certainly did not claim that appellant turned his car around and drove toward Velasquez's truck.  (See *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 5, 6 [defendant committed aggravated assault by turning his car around and driving it at a police car that was in pursuit].)

At most, the evidence raises a suspicion that appellant may have purposely changed lanes while Velasquez was actually beside him, but "a suspicion—even a strong suspicion—is not

---

[5] In support of count 3, the evidence consisted of following:

"[Prosecutor]:  . . .  At some point while you were chasing the vehicle and before officers were able to help you, did anything occur during the chase that made you maneuver out of the way?

"[Velasquez]:  Yes.  I was going in a chase after him on San Fernando Mission, and he started to use his car to, you know, hit me with it."

"[Prosecutor]:  When you described him driving on San Fernando Mission, you're driving behind him; correct?

"[Velasquez]:  Yes.

"[Prosecutor]:  And you said you maneuvered out of the way because he attempted to drive into your truck?

"[Velasquez]:  Yes."

evidence and cannot support factual inferences." (*In re K.M.* (2022) 75 Cal.App.5th 323, 328.) Indeed, two facts not in the record would have to be assumed in order to support a reasonable inference that appellant tried to hit Velasquez's truck with his car: First, that the two vehicles were side-by-side at some point, even though Velasquez testified they were not, and second, that when the vehicles were next to each other, appellant changed lanes to swerve into Velasquez.

Under the circumstances described by Velasquez, we conclude Velasquez's testimony that appellant tried to hit Velasquez's truck while Velasquez was driving behind him to be improbable on its face, and thus insufficient to support the aggravated assault alleged in count 3.

3. *The Evidence in Support of Count 3 Is Insufficient to Establish the Element of Willfulness*

Velasquez's vague testimony that while he was driving behind appellant, appellant tried to use his car to hit Velasquez's truck is also insufficient to support the element of willfulness required to establish aggravated assault on count 3.

Proof of willfulness here requires *some* evidence that appellant was aware of facts that would cause a reasonable person to realize that a battery—i.e., a collision with Velasquez's truck—"would directly, naturally and probably result" from appellant changing lanes while Velasquez was chasing him. (See *Williams, supra,* 26 Cal.4th at p. 788.) Certainly, appellant's own testimony was sufficient to support an inference that he was driving recklessly. But " '[r]eckless conduct alone does not constitute a sufficient basis for assault or for battery.' " (*People v. Colantuono* (1994) 7 Cal.4th 206, 219; *Williams,* at p. 788.) And the fact of which appellant would have had to be aware to satisfy

11

the mental state for assault—that Velasquez was driving beside appellant's car, not behind it—was itself unsupported by any evidence in this case.

## DISPOSITION

The adjudication order as to count 3 is reversed. The matter is remanded to the juvenile court for a new adjudication and disposition order sustaining the petition only as to count 2.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

12